## Finney et al. versus Somerville.

1. The Act of March 28th 1871, authorizes any person to enter on certain streams and erect "upon their own lands, or upon the lands of another," &c., dams, &c., for the purpose of floating lumber, and provides that such person shall "have thereon a right of way exclusive," &c., upon filing bond, &c., and that "owners of land along the stream claiming damages to land or depreciation of its value, because of the erection of such improvements and of the right of way," shall have them assessed by proceeding in the Quarter Sessions. The plaintiff owned a mill and dam on his own land on a stream; the defendants, on their own land, higher up the stream, erected a "splash dam;" by letting out the water in large quantities logs were carried down and injured the plaintiff's dam; and the retaining of the water in defendants' dam for considerable times, and the flooding of plaintiff's wheels when let out, interfered with working his mill. Held, as the improvements were not on plaintiff's land the act did not apply, and the plaintiff's remedy was by a common-law action.

2. The Act of 1871 gives no authority to erect "splash dams;" and defendants could not, by virtue of the act, unreasonably diminish the water-power of plaintiff by retaining the water, nor flood his land by casting an unusual quantity on it.

[Finney *v.* Somerville.]

3. The act could not confer such powers on private persons; they can be given only to corporations organized for public purposes.

4. The plaintiff's mill and part of his dam were in one county and part of the dam in an adjoining county: *Held,* that under the Act of June 13th 1836, sects. 79, 80 (Actions Real), the whole was a "single tenement," and suit could be brought in either county.

October — 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Writs of error to the Court of Common Pleas of *Cambria county* : Of October and November Term 1875, No. 23 and 24.

To September Term 1872, of the court below, William H. Somerville brought an action on the case for nuisance against A. C. Finney, S. D. Barrows, John Mellon and other Mellons; and to June Term 1873, of the same court, the same plaintiff brought a like suit against S. D. Barrows, John Mellon and other Mellons.

Both cases were tried together December 10th 1873, before Dean, P. J.

The plaintiff owned a grist- and saw-mill in Clearfield county, near the line of Cambria county, on Chest creek, a tributary of the Susquehanna; the line between the two counties crossed the dam of the mill, both dam and mill being on plaintiff's land. The Mellons owned timber land higher up on both sides of Chest creek. In August 1870, Finney and Barrows, under a contract with the Mellons, commenced the erection of a splash dam about eight miles above the plaintiff's mill.

The erection of defendants' dam was made under the Act of March 28th 1871, Pamph. L. 237, 2 Br. Purd. 1268.

This act provides that when any person shall have entered upon any stream tributary to the West Branch of the Susquehanna river, not having been declared a highway, and erected on his own or another's land under written authority, any dam, &c., or improved the stream for the purpose of floating timber thereon, such person shall have a right of way exclusive and personal, upon filing in the Court of Quarter Sessions of the proper county a bond with approved sureties, conditioned to pay all damages to property along the stream by reason of the erection of the improvements; also filing in the recorder's office of the proper county a statement, under oath, detailing the facts on which the claim to the right of way is founded, &c. Any owner of land along the stream claiming damages for injury to said land or depreciation of its value because of such improvements and the right of way, may petition the Court of Quarter Sessions, and the court shall appoint viewers to assess the damages and report in the same manner as damages are assessed for opening roads. Such report, being approved by the court, shall be final and conclusive.

Finney and Barrows filed a bond and statement as required by the Act of Assembly; the bond had no revenue stamps.

[Finney v. Somerville.]

The plaintiff declared against defendants for an unlawful use of the water of the stream, by retaining it so as to deprive him of the use of it for considerable lengths of time and for opening their dam for the purpose of floating their logs down the stream, injuring the plaintiff's dam, damming up his tail-race by back-water, so that his mill could not run.

The first case was for injury up to the bringing of that suit; the other for injury afterwards. The defendants pleaded not guilty, and filed a special plea, setting out that the improvements had been made under the Act of 1871, and averring that the plaintiff's only remedy for the injury to his mill and water-power was by the mode prescribed by that act.

The plaintiff gave evidence that he had suffered by the action of the defendants the injuries averred in his declaration; that the dam of defendants backed the water three or four miles; that they opened three gates 18 feet wide and 8 feet high; that over 200 square feet of water would rush out; that the logs carried by the flood thus made broke plaintiff's dam; that his mill was stopped by back-water, the flood would begin to fall in about five hours; that the defendants' dam kept back the water so that the plaintiff could not grind for considerable periods of time; he gave evidence also as to the amount of damage which he had sustained.

The defendants gave evidence in answer to the plaintiff's case and in support of their special plea.

The plaintiff submitted a number of points. Five of them raised the constitutionality of the Act of 1871; two of them raised the question whether the bond filed in the Quarter Sessions by the defendants could be given in evidence in consequence of not having a revenue stamp.

These points were affirmed, but reserved.

The defendants' first point was:—

Under the admitted facts in this case, Chest creek being a tributary of the West Branch of the Susquehanna, and the defendants having complied with the provisions of the Act of Assembly of the 28th of March 1871, entitled "An Act to allow the improvement of creeks and rivulets," the plaintiff is barred by the provisions of that act from maintaining this action, and the verdict of the jury must be for the defendants.

The court, holding that this point depended upon the decision of the question raised by plaintiff's first five points, reserved it.

The defendants' third point and its answer were:—

If the jury believe that the damage (if any was done to plaintiff) was exclusively to the mill and mill-dam of the plaintiff, and that they were within the county of Clearfield, the plaintiff cannot maintain this action in the county of Cambria, and the verdict should be for the defendants.

Answer : " This is correct, but the proof is that the larger part of the mill-dam, and this is a part of the mill property, was in the county of Cambria, and this was testified to by one at least of the witnesses of the defendant."

The court charged :— * * *

" The damages complained of by the plaintiff are to his mill property. The mill property is the mill itself ; that is, the buildings and machinery, the ground appertenant thereto, and necessary to its use and enjoyment as a mill, the mill-dam, the head-race, and the tail-race, these including what is known as a mill property. The mill property, therefore, lies partly in Clearfield county and partly in Cambria county. In any fair view of the evidence in this case, and under the Act of Assembly making provision for such case, the plaintiff, we hold, has properly instituted this suit in Cambria county, and so far as the evidence in this case is concerned, his suit is shown to have been instituted in this county, where the realty alleged to have been damaged is partly situated. If there was any dispute as to the location of the property in the evidence, that would be a question for your determination, but the defendants themselves, by one of their witnesses, prove that the line cuts the mill-dam a few feet above the breast, leaving the larger portion in Cambria county ; therefore the mill property is partly in both counties. * * *

" The purpose in view of these defendants in erecting the dam was a lawful one, the purpose of conducting the timber to market, and so far as enterprises of the kind are lawful they are laudable and commendable. To develop the resources of a neighborhood, make that valuable which before was valueless, by constructing improvements and furnishing facilities for reaching market, is at all times commendable. The plaintiff could have no reason to complain of the defendants for merely doing this much, and they, under the right from Mellons, had a right so to do. The plaintiff, Somerville, had also the right to use the water of the creek in prosecuting his business. Both owned or had possession of land adjoining the stream.

" Each lawfully could use the water of the stream. It by no means necessarily follows that every use made of it by either of them was lawful. The use by the upper landowners to be lawful must be such as does not seriously deprive the lower landowner on the stream of his right to the reasonable use of it. If by retaining the water in the splash dam, the water of the stream was sensibly diminished, so as to cut off the supply necessary to run the plaintiff's mill ; or if, after collecting water in the dam, it was discharged in such unusually large volume or quantity as to be destructive to his property, or to dam up by back-water his tail-race, and thus stop his mill, this would be an unreasonable or unlawful use of the water, for which the defendants would be answer-

[Finney *v.* Somerville.]

able in damages to the plaintiff, because it would deprive him of a reasonable use of it, and he being the lower landowner has a right also to the reasonable use of the water, without being deprived of that use by the act of the upper landowner. This is the law applicable to landowners either adjoining or upon the same stream.

"It cannot be questioned that the use of water for the purpose of running a grist-mill, such as the one owned by the plaintiff, was a reasonable use by the plaintiff. We do not understand it to be alleged that the extent to which he used it was an unreasonable use. He would not have a right to demand all the water, and because he did not get it all, to say then that the use by the upper owner was unreasonable. He would have the right to the reasonable use of a reasonable quantity for his purpose—running a grist-mill; and he would have a right to that reasonable quantity, notwithstanding all of it, or a large portion of it, was necessary to and was taken by the upper landowner. If the quantity used by the plaintiff below at his grist-mill was a resonable quantity, did the defendants, by the construction of the splash dam and the use to which it was put, seriously interfere with the use made of the water by Somerville at his mill, or did they deprive him of that to which he had the right to claim by reason of his ownership of the land on the bank of that stream; or at other times did they turn the water on his property in such large quantities as to back it up in his tail-race and stop his mill and destroy his dam? * * *

"The defendants had a right to the reasonable use of this stream in floating logs. * * * If, by the use of it in splashing out logs, they did not seriously interfere with the plaintiff's reasonable use of it below, or deprive him of the reasonable use of it below, then their use of it could not be said to be unreasonable, that is, the defendants' use of it. It is a question for you, taking into view here all the circumstances of the case, the surroundings of that stream, its nature, size, and the uses to which it was put. If the plaintiff's use of it was obstructed and seriously injured, as is claimed by him, his mill stopped for days, his property destroyed by the splashes, that would be an unreasonable use of it by the defendants, it cannot be questioned; such a use as would be a wrongful one so far as it injuriously affected this plaintiff, and they would be answerable in damages.

"On the contrary, if the evidence shows, as the defendants claim, that the splashes did no injury, detained no water when water was scarce, and that when the stream was full the plaintiff had as much water as he needed for his grist-mill, no matter what use they made of it; that when the water was discharged the backwater therefrom caused no stoppage of the water-wheel, as is claimed by the plaintiff, or, if any, so slight as to be scarcely appreciable or ascertainable; or if the dam was carried away by an

[Finney *v.* Somerville.]

unusual though natural flood, then this use of it caused no injury to the plaintiff, and could not be said to be unreasonable, and would not be answerable in damages. It is for you, under the evidence, to determine this question. If the use by the defendants was a reasonable one, they would not be answerable for damages. If it was unreasonable they would be responsible for such damages as the plaintiff has shown that he has sustained." * * *

The verdict was for the plaintiff; in the first case for $446.50, in the second case for $1341.16.

The court afterward entered judgment on the verdicts for the plaintiff on the reserved points.

The defendants took a writ of error, and assigned for error the charge of the court and the answer to their third point, the refusal to affirm their other points, and the answers to the plaintiff's points.

*F. A. Shoemaker, J. P. Linton* and *R. L. Johnston,* for plaintiffs in error.

*G. M. Reade,* for defendant in error, as to jurisdiction, cited Act of June 13th 1836, sect. 79, 80, 1 Br. Purd. 55, pl. 1, 2 ; 1 Bac. Abr. 56–58 ; Oliphant *v.* Smith, 3 Penna. R. 181 ; 1 Com. Dig. 250, 251.

Mr. Justice GORDON delivered the opinion of the court, November 8th 1875.

It is unnecessary for us to review the opinion of the learned judge below, on the reserved points involving the constitutionality of the Act of 28th of March 1871 (Purd. Dig. 1268), as that opinion, as we view the matter, in nowise affects the case. The damage complained of by the plaintiff below arose from the unlawful use by the defendants of their dam, which, it was conceded, was erected for a lawful purpose. None of the plaintiff's land was taken or used by the defendants. Their improvements were upon territory to which the plaintiff had no claim ; nor is it alleged that they assumed a permanent control of that part of Chest creek flowing over his land. Had they so done, a very different question would have been raised. The complaint of the plaintiff was that the defendants so used their dam as sometimes to cut off the water from his mill, at other times to flood out his wheels, and that, upon one occasion, they precipitated so great a mass of water and logs upon his improvements as seriously to injure them by sweeping away a large part of his dam. If this were so, and the jury have so found, they were acting extra the Act of Assembly, and could not justify themselves under its provisions.

The act gave them no authority to erect or maintain splash dams, and had it conferred such power, they were bound so to use

[Finney *v.* Somerville.]

it as to do no injury to the property of those below them. They could thereby neither unreasonably diminish the power of the plaintiff by retaining the water, nor flood his land by casting an unusual quantity of water upon it. The statute neither did nor could confer such powers, as those claimed by the defendants, upon private persons. Only corporations organized for public purposes can be clothed with such privileges; to such and such only may the legislature grant the Commonwealth's right of eminent domain.

The learned judge instructed the jury, that the defendants had the right to use the water of the creek in a reasonable manner, so as neither to deprive the plaintiff of the use of it, nor to damage his lawful structures: holding them responsible only for the negligence and improper exercise of their rights.

In this there is nothing which merits our disapproval, for, by all authority, the case was well put to the jury: Hetrich *v.* Deachler, 6 Barr 32.

As to the question of jurisdiction, that is settled by the fact that not only is part of the tract of land, on which the plaintiff's mill is built, in the county of Cambria, but so also is the pond or water basin which is a necessary adjunct or appertenance to the mill. This then being a "single tenement" lying in both Clearfield and Cambria counties, the case falls within the 80th sect. of the Act of June 13th 1836, and was therefore well brought in the latter county.

The judgment is affirmed.